IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM SAYE
M. D.,

    Plaintiff,

      v.

UNUMPROVIDENT
CORPORATION, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:07-CV-31-TWT

## ORDER

This is an action to recover disability insurance benefits.  It is before the Court

on Plaintiff William Saye's Motion to Remand [Doc. 10]; Defendants UnumProvident

Corporation ("Unum") and Provident Life and Accident Insurance Company's

("Provident Life") Motion to Drop Defendants Peachtree Planning Corporation

("PPC") and Howard T. Antle as Party Defendants [Doc. 2]; PPC's Motion to Dismiss

or, in the Alternative, Motion for a More Definite Statement [Doc. 6]; Antle's Motion

to Dismiss or, in the Alterative, Motion for More Definite Statement [Doc. 8]; Unum

and Provident Life's Motion to Dismiss [Doc. 14]; Defendants' Motion to Stay

Discovery [Doc. 19]; Unum and Provident Life's Motion for a Protective Order [Doc.

20]; PPC and Antle's Motion to Dismiss [Doc. 22]; the Plaintiff's Motion to Amend

his Complaint [Doc. 24]; Unum and Provident Life's Motion to Partially Dismiss the Plaintiff's First Amended Complaint [Doc. 26]; the Plaintiff's Emergency Motion to Stay Consideration of All Motions to Dismiss or Drop [Doc. 30]; the Plaintiff's Motion to Compel Discovery [Doc. 33]; the Plaintiff's Motion for Sanctions Against Unum and Provident Life [Doc. 34]; the Plaintiff's Motion for Sanctions Against PPC and Antle [Doc. 35]; and the Plaintiff's Motion for Oral Argument [Doc. 38].  For the reasons set forth below, the Plaintiff's Motion to Remand is GRANTED in part and DENIED in part, the Plaintiff's Motions for Sanctions are DENIED, and the other pending motions are DENIED as moot.

## I. BACKGROUND

Prior to 2001, Dr. William Saye was a practicing physician in the field of obstetrics and gynecology.  Part of his medical practice involved performing laparoscopic surgery.  In 1984, 1986 and 1989, Dr. Saye bought three disability insurance policies from Defendant Provident Life.  He purchased these polices through Defendant Howard Antle, a Georgia citizen and licensed insurance agent in the state of Georgia.[1]  The Plaintiff contends that Antle told him at the time he purchased these policies that he would be covered for the rest of his life if he was not able to perform surgery fully.  The terms of these policies, however, stated that he

---

[1]Provident Life and its parent company, Unum, are both citizens of Tennessee.

would only be covered for life in the event he was totally disabled by injury prior to the age of 65 or by sickness prior to the age of 55.  The policies stipulated that, thereafter, his maximum benefits would be limited based on his age and the nature of his disability.

In November 2001, the Plaintiff's treating physician diagnosed him with Dupuytren's contracture, a condition that causes a person's fingers to draw in towards his palm.  Based on this diagnosis, the Plaintiff's doctor determined that he was disabled from his occupation.  In January 2002, at the age of 62, the Plaintiff submitted a claim for total disability based on this condition.  On December 5, 2002, Unum approved his claim.  In early 2004, however, Unum and Provident Life claimed that his disability was due to sickness rather than injury, thus precluding him from recovering any benefits beyond the age of 65.  The Plaintiff appealed that decision, contending that his disability qualified as an injury under the policies.  All of his appeals were denied.

On May 19, 2006, the Plaintiff filed an action in the Superior Court of Fulton County, Georgia, asserting claims against Defendants Unum, Provident Life and Antle.  The Defendants removed the case to this Court, claiming that diversity of citizenship existed because Antle had been fraudulently joined in the proceeding.  The Plaintiff subsequently moved to have the case remanded, contending that he had

alleged several valid claims against Antle and that this Court lacked jurisdiction.[2]

This Court addressed each of the Plaintiff's claims against Antle and found that remand was inappropriate.  Specifically, the Court determined that there was no possibility of success on the Plaintiff's misrepresentation claim against Antle.  As to the other claim alleged against Antle–his failure to procure insurance for the Plaintiff–the Court declined to consider it because the Complaint had not properly alleged such a claim.  The Court determined that Antle had been fraudulently joined and dismissed him from the case.  The motion to remand was denied.  Rather than proceed in this Court with his remaining claims, however, the Plaintiff voluntarily dismissed the lawsuit.

He subsequently filed a renewal action in the Superior Court of Fulton County on December 6, 2006.  In addition to Defendants Unum, Provident Life and Antle, the Complaint included claims against PPC, a financial planning firm based in Georgia with which Antle was affiliated.  Included among the ten counts were the following claims: (1) declaratory relief; (2) breach of contract against Unum and Provident Life; (3) bad faith against Unum and Provident Life; (4) negligent and intentional fraud and misrepresentation against Unum, Provident Life, and PPC; (5) negligence against

---

[2]He also contended that the Defendants had failed to demonstrate that his claims met the requisite amount in controversy under 28 U.S.C. § 1332.

Antle and PPC; (6) failure to procure insurance against Antle and PPC; (7) breach of contract against Antle; (8) breach of fiduciary duty against Antle and PPC; (9) stubborn litigiousness; and (10) punitive damages.  Defendants Unum and Provident Life again removed the case to this Court, alleging that PPC and Antle have been fraudulently joined.  The Plaintiff now moves to remand and the Defendants have filed motions to dismiss and to drop Antle and PPC from this lawsuit.

## II. DISCUSSION

### A. Remand

In this action, the Court is again asked to determine whether it has jurisdiction over the Plaintiff's claims.  As this Court stated previously, removal statutes are to be interpreted narrowly, with any doubts construed against removal jurisdiction.  See Williams v. AFC Enter., Inc., 389 F.3d 1185, 1189 (11th Cir. 2004); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).  The removing party, moreover, bears the burden of demonstrating federal jurisdiction.  Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005); Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998).

The Plaintiff contends that removal was improper because complete diversity does not exist between the parties as required under 28 U.S.C. § 1332.  The Defendants argued in their notice of removal, however, that Antle and PPC have been

fraudulently joined in these proceedings.  Moreover, in a recently filed supplemental response to the Plaintiff's motion, the Defendants contend for the first time that the Plaintiff resided in and was a citizen of Florida, not Georgia, both at the time he filed the original complaint and at the time they filed their notice of removal.  They thus claim that total diversity exists regardless of how the Court decides their claim of fraudulent joinder.  The Court will separately address each of these issues, examining first the Defendants' claim regarding the Plaintiff's state of citizenship.

1. Citizenship of Plaintiff

Without explicitly stating so, the Defendants attempt to amend their removal notice to include a claim that complete diversity exists because of recently discovered evidence that the Plaintiff is in fact a citizen of the state of Florida.  Normally, a notice of removal must be filed within thirty days after the defendant has received "a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b).  It is generally held that outside of this initial thirty day period, amendments are permitted only to fix "technical defects" in the jurisdictional allegations, not to submit wholly new grounds for removal jurisdiction.  Fuller v. Exxon Corp., 131 F. Supp. 2d 1323, 1328 (S.D. Ala. 2001); see also Garza v. Midland Nat. Ins. Co., 256 F. Supp. 12, 14 (D.C. Fla. 1966) (finding the statute applicable "only to 'defective' allegations of jurisdiction, not 'missing'

allegations"); 14C CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3733, at 358-61 (3d ed. 1998) ("[T]he notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice... Completely new grounds for removal jurisdiction may not be added ..."). Examples of technical defects include an instance where the removal notice claimed diversity, but failed to identify the citizenship of an individual defendant or place of incorporation for a corporate defendant. See, e.g., D. J. McDuffie, Inc. v. Old Reliable Fire Ins. Co., 608 F.2d 145 (5th Cir. 1979) (permitting the defendant to amend its removal petition to include previously absent allegations as to the citizenship of the parties); Wright v. Combined Ins. Co. of Am., 959 F. Supp. 356, 360 (N.D. Miss. 1997) (permitting an amendment to identify the citizenship of a defendant).

Here, the Court finds that this putative amendment constitutes more than the correction of a technical defect. In their notice of removal, the Defendants state that the Plaintiff is "a citizen of the State of Georgia who resides in the Northern District of Georgia." (Defs.' Removal Not., ¶ 2.) Amending their petition to claim that the Plaintiff is in fact a citizen of Florida completely changes the Defendants' basis for claiming that diversity jurisdiction exists here. See Blakeley v. United Cable Sys., 105 F. Supp. 2d 574, 578-79 (S.D. Miss. 2000) ("Thus, where a defendant, for

example, has alleged the existence of diversity jurisdiction in its removal petition but has failed to allege all of the specific facts, or has <u>incorrectly alleged some of the facts underlying its jurisdictional conclusion</u>, courts have allowed amendments to cure these deficiencies.") (emphasis added); <u>FHC Options, Inc. v. Security Life Ins. Co. of Am.</u>, 993 F. Supp. 378, 381 (E.D. Va. 1998) (finding that the defendant's incorrect pleading as to its place of incorporation was an imperfect allegation that could be amended outside of the thirty day statutory limit); <u>Wright</u>, 959 F. Supp. at 360 (permitting an amendment to a removal petition to include an allegation that the citizenship of one of the defendants was in a state other than the one proffered by the plaintiff, thus establishing diversity).  Therefore, this Court concludes that denying the motion to remand based on these new allegations regarding the Plaintiff's citizenship is inappropriate.

2. <u>Fraudulent Joinder</u>

The Court next addresses the grounds originally cited in the removal notice – the alleged fraudulent joinder of Antle and PPC.  "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1287 (11th Cir. 1998).  It can be proven *inter alia* by demonstrating that there is no possibility a plaintiff can establish a cause of action against any non-diverse defendant.  To carry this burden, a defendant

must show that, after drawing all reasonable inferences from the record in favor of the plaintiff, no reasonable basis exists that state law might impose liability based on the facts involved.  Crowe v. Coleman, 113 F.3d 1536, 1542 (11th Cir. 1997).  Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Id. at 1538 (emphasis added).  Put differently, a motion for remand should be denied only if the defendant shows by clear and convincing evidence that there is no possibility the plaintiff can establish a cause of action against a resident defendant.  Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1283 (11th Cir. 2006). Although a court may look beyond the face of the complaint on a motion to remand, it must "stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent." Crowe, 113 F.3d at 1542.

Here, the Court concludes that the possibility exists that a Georgia state court would find at least one sufficiently stated cause of action against one of these resident Defendants.  The Amended Complaint alleges that Antle was negligent in failing to procure insurance for Dr. Saye.  The Defendants contend that this claim cannot succeed, however, both because it is barred by the statute of limitations and because it fails as a matter of law.  The Court does not agree.  First, as to the statute of

limitations, the parties agree that the relevant period is four years, but disagree when this period began to run.  The Georgia Supreme Court has held that a statute of limitations does not start until "the time when the plaintiff could first have maintained his action to a successful result."  Hoffman v. Insurance Co. of North Am., 241 Ga. 328, 329 (1978) (citation and punctuation omitted).  In Hoffman, the court addressed a claim by an insured against his agent for failing to procure insurance.  The court stated that:

> The test to be applied in determining when the statute of limitations begins to run against an action sounding in tort is in whether the act causing the damage is in and of itself an invasion of some right of the plaintiff, and thus constitutes a legal injury and gives rise to a cause of action. If the act is of itself not unlawful in this sense, and a recovery is sought only on account of damage subsequently accruing from and consequent upon the act, the cause of action accrues and the statute begins to run only when the damage is sustained; but if the act causing such subsequent damage is of itself unlawful in the sense that it constitutes a legal injury to the plaintiff, and is thus a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, however slight the actual damage then may be.

Id. at 330.  In other words, the "action in tort for negligence depends upon the presence of damages and, therefore, may not be maintained until the principal suffers a loss."  Id. at 329.  The court concluded that the plaintiff's cause of action was not barred because he could not bring his tort claim against the insurance agent until he suffered damages.  Id.  Similarly here, the Plaintiff argues that he did not have a tort claim for failure to procure insurance until Unum and Provident Life denied his

coverage.  Because the Plaintiff's claim was not finally denied by these Defendants until February 10, 2006, his claim is thus not time barred.

The Defendants make several attempts to distinguish Hoffman.  First, they argue that the case is different because "it did not involve a disability policy such as the ones at issue here."  (Defs.' Resp. to Mot. to Rem., at 17.)  This distinction is not persuasive.  In Hoffman, the damage occurred when the plaintiff was sued, whereas here the damage was the failure to pay disability benefits.  In both instances, therefore, there were no damages until the insurers denied coverage.  The Defendants further claim that the Plaintiff's alleged damages "were not proximately caused by anything that Mr. Antle did or did not do, but by Provident Life's interpretation of the scope of the coverage under the policies." (Id., at 19.)  This claim is also erroneous, as it is in actuality an argument as to the merits of the Plaintiff's claims and is inappropriate for consideration at this stage in the proceedings.  The Complaint sufficiently alleges that Antle's actions proximately caused the Plaintiff's injuries because Dr. Saye claims that he "requested disability insurance that would cover him in the event he could no longer perform surgery regardless of cause" and Antle failed to procure such insurance.  (Am. Ver. Compl. ¶¶ 121-122.)

Georgia law appears to indicate that the statute of limitations does not begin to run until the insurer refuses to honor the beneficiary's claim.  The Court is further

persuaded by the rationale of other state courts that have addressed negligent procurement claims and reached the same conclusion.  See Bush v. Ford Life Ins. Co., 682 So.2d 46, 47 (Ala. 1996) (concluding that a negligent procurement claim against a credit-life insurance policy provider did not accrue until the insurer's refusal to honor the beneficiary's claim); Blumberg v. USAA Cas. Ins. Co., 729 So.2d 460, 462 (Fla. Dist. Ct. App. 1999) (finding that the statute of limitations began to run on an insured's claim for negligent procurement when he learned that coverage had been denied); International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 560 N.E.2d 122, 125 (Mass. App. Ct. 1990) (holding that an action against an insurance agent for lack of coverage did not begin until the plaintiff had suffered harm by settling the underlying tort action).[3]  Even if Hoffman does not speak conclusively on this issue, moreover, this Court must "resolve any uncertainties about state substantive law in favor of the plaintiff."  Crowe, 113 F.3d at 1538.  The Court thus concludes that the statute of limitations does not bar the Plaintiff's claim.

―――――――――――――

[3]But see Kaufman v. C.L. McCabe & Sons, Inc., 603 A.2d 831 (Del. 1992) (finding that an insured's action against its agent for negligent procurement of fire insurance coverage accrued when the policy was delivered); Plaza Bottle Shop, Inc. v. Al Torstrick Ins. Agency, Inc., 712 S.W.2d 349, 350 (Ky. Ct. App. 1986) (stating that a cause of action for negligent procurement began to run when insured was informed that it had no liquor liability coverage, not when judgment was rendered against it).

Addressing next the merits of this claim, the general rule in Georgia is that an insurance agent who negligently fails to procure insurance may be held liable for any resulting loss. Robinson v. J. Smith Lanier & Co. of Carrollton, 220 Ga. App. 737, 738 (1996); Atlanta Women's Club, Inc. v. Washburne, 207 Ga. App. 3, 4 (1992); Turner, Wood & Smith v. Reed, 169 Ga. App. 213, 214 (1983).  However, an insured generally has an obligation "to read and examine an insurance policy to determine whether the coverage desired has been furnished."  MacIntyre & Edwards, Inc. v. Rich, 267 Ga. App. 78, 80 (2004).  To this rule, there are two exceptions where either: (1) the agent has held himself out as an expert and the insured has reasonably relied on his expertise in identifying and acquiring the correct type and amount of insurance, "unless an examination of the policy would have made it 'readily apparent' that the coverage requested was not issued;"[4] or (2) a special relationship of trust exists such that would have prevented or excused the insured from a duty to exercise ordinary diligence.  Heard v. Sexton, 243 Ga. App. 462, 463 (2000).  Under the first exception, the Georgia Court of Appeals has held that where the insured knows what kind of policy he wants before approaching the agent and acquires that type of insurance, he

---

[4]Other Georgia Court of Appeals decisions cite this "readily apparent" language provision without indicating that any exceptions apply to the insured's duty to read. See Rich, 267 Ga. App. at 80; McCoury v. Allstate Ins. Co., 254 Ga. App. 27, 28 (2002).

has not relied on the agent's expertise.  See <u>Canales v. Wilson Southland Ins. Agency</u>, 261 Ga. App. 529, 531 (2003).  Here, the Complaint states that the Plaintiff heavily relied on Antle to identify and procure the correct amount or type of insurance, understood that Antle was a specialist who could procure insurance designed to fit his personal needs, and "requested disability insurance that would provide lifetime benefits in the event he was not able to perform surgery regardless of the cause of the disability."  (Am. Ver. Compl. ¶¶ 19-21, 31.)  Although the Plaintiff claims that he read the policies and that the language was ambiguous and confusing, the Court finds that it was readily apparent from reading these policies that he would not receive lifetime benefits regardless of the cause of disability.  See <u>Neely Development Corp. v. Service First Investments, Inc.</u>, 261 Ga. App. 253, 255 (2003) ("The existence or non-existence of an ambiguity is itself a question of law for the court.") (citation omitted).

Furthermore, while the Plaintiff claims to have relied on Antle to identify the proper coverage, it is clear from his pleadings that he knew the type of coverage he wanted before approaching the insurance agent.  See <u>Canales</u>, 261 Ga. App. at 531 ("According to Canales's affidavit, he knew what kind of insurance policy he wanted for the van before he approached Wilson. Thus, he did not rely on Wilson's expertise to identify and procure the correct type of insurance for him."); <u>Greene v. Lilburn Ins.</u>

Agency, Inc., 191 Ga. App. 829, 829 (1989) ("In his deposition, appellant states that he specifically requested theft coverage. Therefore, '[t]here is no evidence that appellee[s] had any discretion in the type ... of insurance.'") (citation omitted). For these reasons, this first exception does not apply.

The Plaintiff has sufficiently alleged, however, that a special relationship of trust existed between him and Antle such that he would have been excused from reading the insurance contract. A confidential relationship exists where either "(1) one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or (2) where, from a similar relationship of mutual confidence, the law requires the utmost good faith." Canales, 261 Ga. App. at 531; see also O.C.G.A. § 23-2-58. However, "the mere fact that one reposes trust and confidence in another does not create a confidential relationship." Trulove v. Woodmen of World Life Ins. Soc., 204 Ga. App. 362, 365 (1992).

The Georgia Supreme Court has never said exactly what is required to prove this confidential relationship, and lower court holdings fail to resolve this issue conclusively. In Canales, for example, the Georgia Court of Appeals found that this exception did not apply to an insured's claim that his agent failed to procure insurance that would cover his car while he was in Mexico. To support his argument that a confidential relationship existed between him and the agent, the claimant provided

evidence that "he had dealt with [the agent] in the past and had come to trust him; that he was 'unsophisticated in matters of insurance'; and that he did not speak English." Canales, 261 Ga. App. at 531.  The court discounted the plaintiff's professed lack of sophistication because he had not relied on the defendant in determining what kind of insurance he needed and further rejected the relevance of his inability to speak English because he had an interpreter.  Id. at 531.  The court thus concluded that these allegations failed to demonstrate a special relationship of trust, but did not explain specifically what more needed to be shown.  By contrast, in Heard, 243 Ga. App. at 462, the Court of Appeals suggested that this "special relationship" exception applied to the plaintiff's failure to procure insurance claim, but failed to explain further and granted the defendant's motion for summary judgment.  Id. at 463.

The Georgia Court of Appeals analysis in Canales indicates that the Plaintiff is highly unlikely to succeed on this claim.  Importantly, however, the Defendants have provided no case where such a determination was made prior to summary judgment and, here, they attempt to have this Court adjudicate the merits of the Plaintiff's claim without the benefit of full discovery.  This suggests that remand is appropriate in this case.  Furthermore, as discussed previously, where state case law is unclear, a district court should err on the side of remand.  Indeed, in Crowe, where

the parties relied on conflicting Georgia Court of Appeals decisions, the Eleventh

Circuit stated:

> If this case were properly before the district court (and this court) under original diversity jurisdiction, we would be obligated to predict how the Georgia Supreme Court would rule on this issue or to certify the question to the Georgia Supreme Court. For purposes of determining whether this case should be remanded to state court, however, the inquiry by federal judges must not go so far...the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.

Crowe, 113 F.3d at 1540 (citation omitted).   The court thus concluded that "the

arguable confusion in Georgia law itself supports remanding this case to state court."

Id.

Based on the pleadings, the Plaintiff has presented an arguable claim that a

special or confidential relationship existed between him and Antle.  The Complaint

alleges that the Plaintiff knew Antle as an insurance agent, expert and specialist for

twenty years and relied heavily on Antle's advice and counsel.  (Am Ver. Compl. ¶¶

11, 15.)  He further alleges that this special relationship of trust is demonstrated:

> [B]y the fact that Antle, upon his advice and counsel to Dr. Saye, is the Trustee of an irrevocable trust whereby whole life insurance proceeds from several different life insurance policies purchased through Antle and Peachtree Planning make up the corpus of the trust.

(Id. ¶ 116.)  The Court's task here is not gauge the sufficiency of these pleadings, only

to determine whether the Defendants have shown by clear and convincing evidence

that there is no possibility the Plaintiff can establish a cause of action against Antle. See Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1284 (11th Cir. 2006) (concluding that "for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands."). Construing these allegations in the light most favorable to the Plaintiff, the Court does not find that the Defendants have met their burden. This case therefore warrants remand.

B. Attorney's Fees

The Plaintiff also claims that he is entitled to attorney's fees as a result of this improper removal pursuant to 28 U.S.C. § 1447(c). The Supreme Court recently held, however, that attorney's fees should be awarded under this provision only where the "removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 126 S. Ct. 704, 711 (2005); accord Bauknight v. Monroe County, Fla., 446 F.3d 1327, 1329 (11th Cir. 2006); see also Clark v. Ameritas Inv. Corp., 408 F. Supp. 2d 819, 835 (D. Neb. 2005) (concluding that attorney's fees and costs were not warranted because the defendant had removed the case based on an "objectively reasonable belief that it was entitled to seek a federal forum for resolution of this case"). Given the Defendants' well reasoned briefs and

their successful removal of the Plaintiff's previous lawsuit based on substantially similar allegations, the Court finds that no fees or costs are warranted in this instance.

      C. <u>Motion for Rule 11 Sanctions</u>

      The Plaintiff has also filed motions for sanctions under Rule 11 of the Federal Rules of Civil Procedure against the Defendants.  Specifically, he alleges that the Defendants improperly removed, or consented to remove, this case and filed motions to drop and to dismiss without any factual or legal justification.  Rule 11 sanctions are imposed when a party files a pleading that either: (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) is filed in bad faith for an improper purpose.  <u>Kaplan v. DaimlerChrysler, A.G.</u>, 331 F.3d 1251, 1255 (11th Cir. 2003).  Sanctions are only warranted, however, when a party exhibits a "deliberate indifference to obvious facts," not when the party's evidence to support a claim is "merely weak."  <u>Riccard v. Prudential Ins. Co.</u>, 307 F.3d 1277, 1294 (11th Cir. 2002).  After a thorough review of the Defendants' motions, the Court finds no behavior that properly warrants sanctions in this case.  Accordingly, the Plaintiff's motions are denied.

III. <u>CONCLUSION</u>

For the reasons set forth above, the Plaintiff's Motion to Remand [Doc. 10] is

GRANTED in part and DENIED in part, the Plaintiff's Motion for Sanctions Against

Unum and Provident Life [Doc. 34] is DENIED, the Plaintiff's Motion for Sanctions

Against PPC and Antle [Doc. 35] is DENIED, and the other pending motions are

DENIED as moot.  This case is remanded to the Superior Court of Fulton County.

SO ORDERED, this 9 day of August, 2007.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge